Thomas DOHERTY, Plaintiff,

v.

DAVY SONGER, INC., Defendant–
Third–Party Plaintiff–Appellant,
Cross–Appellee,

v.

Morrison, Inc., Third–Party Defendant–
Appellee, Cross–Appellant.

Nos. 98–3370, 98–3447.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 17, 1999.

Decided Oct. 28, 1999.

Rehearing Denied Dec. 2, 1999.

Daniel Streckert, Goldberg, Weisman & Cairo, Chicago, IL, for plaintiff.

James T. Ferrini, Melinda Sue Kollross (argued), Clausen Miller P.C., Chicago, IL, for Davy Songer, Inc.

Larry G. Evans, Tina M. Bengs (argued), Hoeppner, Wagner & Evans, Valparaiso, IN, for Morrison, Inc.

Before BAUER, FLAUM and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Morrison, Inc. ("Morrison") subcontracted with Songer, Inc. ("Songer") to perform pipefitting work. Part of their contract ("the Agreement") required Morrison to procure insurance, covering both Morrison and Songer for the negligence of their employees, for injuries sustained by any person "in any manner caused by, arising from, incident to, connected with, or growing out of the work governed by this Agreement." R.17, Ex.A at 14. Although Morrison purchased insurance that covered the negligence of both Morrison's and Songer's employees, it only extended that coverage to include injuries arising from Morrison's work.

While working exclusively for Songer, two of Songer's employees negligently injured one of Morrison's employees, Thomas Doherty, who was working on Morrison's project. When Doherty sued Songer for its employees' negligence, Songer filed a third-party complaint against Morrison for indemnification under their contract. Morrison's insurer rejected the claim because it did not fall under the insurance policy Morrison had obtained. Songer amended its third-party complaint to allege a breach of contract by Morrison.

The district court held that the insurance policy the Agreement required Morrison to obtain would have covered Doherty's claim. Therefore, by not procuring the correct policy, Morrison breached its contract with Songer. Songer thereafter settled with Doherty, with Songer's own insurers paying the claim. Songer's insurers moved for leave to subrogate to Songer's claim against Morrison, and Songer moved for leave to file an amended complaint to include attorneys' fees. Although the district court found that Morrison breached its contract, it held in a separate order that Songer could not prove damages. According to the court, damages were too speculative because Songer could not prove that, even if Morrison had procured the correct insurance, Morrison's insurer, rather than Songer's, would have paid Doherty's claim. Therefore, because Songer did not have a claim against Morrison, Songer's insurers could not subrogate to Songer's claim. Finally, the district court denied Songer leave to amend for attorneys' fees because the motion to amend arrived too late and without justification.

For the reasons set forth more fully in the following opinion, we agree with the district court that the contract requiring Morrison to procure insurance, by employing the terms "incident to, connected with, or growing out of" the work of the subcontractor and by stating that the policy will cover both contractor and subcontractor for the negligence of their employees, required Morrison to procure a policy that would cover any injuries related to its work—even if caused by Songer's employees in their own work, but affecting Morrison's employees in their work. Failure to procure such a policy was a breach of contract by Morrison. We further hold that, under the terms of the contract, the burden of risk shifts, affecting the obligations of both parties' insurers. *See American Underwriters, Inc. v. Auto-*

*Owners Mut. Ins. Co.*, 454 N.E.2d 876, 877 (Ind.Ct.App.1983). By failing to procure the required insurance, Morrison is responsible for resulting damages, even though Songer also holds its own general liability insurance that covers the claim. Damages are the amount that would have been due under the contract that should have been obtained. *See Rieth–Riley Constr. Co. v. Auto–Owners Mut. Ins. Co.*, 408 N.E.2d 640, 645 (Ind.Ct.App.1980). Because Songer held a valid indemnification claim for damages against Morrison under the insurance contract, and Songer's insurer had paid the underlying claim, that insurer may subrogate to Songer's indemnification claim. Finally, the district court here did not state how the delay of the amendment for attorneys' fees would cause undue prejudice to the opposing party. District courts may deny leave to amend a complaint due to delay, if the delay would unduly prejudice the opposing party. However, mere delay, without a showing of prejudice, is not sufficient to deny the amendment. On remand, therefore, it must revisit this issue.

# I

# BACKGROUND

## A. Facts

Morrison subcontracted with Songer to perform pipefitting work for Songer on a blast furnace project at the Bethlehem Steel Mill in Gary, Indiana. One of Morrison's employees, Thomas Doherty, worked as a pipefitter on this project. While Doherty was working, two of Songer's employees negligently dropped a cylinder onto Doherty's hand. Doherty suffered severe damage to his right small finger; amputation was ultimately required. Doherty incurred extensive hospital expenses and lost 27 weeks of wages. Thereafter, Doherty filed suit against Songer for the negligence of its employees.

Article 15 of the Agreement provides in part:

Subcontractor shall maintain ... in full force and effect throughout the entire term of this Agreement, insurance coverage ... insuring ... Subcontractor's, Contractor's and/or Contractor's agents, servants' and employees' liability to pay for any bodily injuries or death received or sustained by any person or persons, including employees of Contractor, in any manner caused by, arising from, incident to, connected with, or growing out of the work governed by this Agreement....

R.17, Ex.A at 14. The policy continues to discuss Morrison's duty to procure insurance for Songer, stating in pertinent part:

[The] policies of insurance shall designate Contractor and Owner as an additional named insured and the insurance carrier shall promise to defend Contractor and Owner and/or Contractor's and Owner's agents, servants, and employees and provide insurance coverage of not less than Two Million Dollars ($2,000,000) for bodily injury or death arising out of any one occurrence....

Such insurance policies shall provide a defense and coverage to Contractor, Owner, and/or Contractor's and Owner's agents, servants, and employees regardless of whether the alleged bodily injury, death, or property damage was caused or alleged to be caused in whole or in part by the conduct, fault, or negligence of Contractor or Owner and/or Contractor's or Owner's agents', servants['], and employees' activities....

*Id.*

It is understood that the policy Morrison procured covered only liability arising out of Morrison's work. Because Doherty's claim did not arise out of Morrison's work, but rather out of Songer's employees' negligence in their work, coverage was denied. Songer then alleged, in a third-party complaint, that Morrison breached its contract. Songer also demanded judgment for any sum that Doher-

ty might recover against Songer and for Songer's costs and attorneys' fees.[1]

## B. Procedural History

Songer moved for summary judgment on May 28, 1997. The district court granted the motion in part, holding that Morrison had breached its agreement to obtain insurance that would have covered Doherty's claim. However, the court did not rule on the question of damages. Thereafter, Songer settled its claim with Doherty for $225,000. Songer's insurer, National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") paid the $225,000 to Doherty, and reimbursed Songer for the costs of defending Doherty's suit ($17,317.85). National Union and Finance International Limited ("FIL") had previously contracted for FIL to provide reinsurance to National Union; therefore, FIL reimbursed National Union for the amounts paid by National Union to Doherty and Songer.

Morrison next filed for summary judgment; it asserted that Songer had not suffered damages by Morrison's breach because Songer's insurer, National Union, had paid Doherty's settlement. Also, National Union would have been obligated to pay the claim, even if Morrison had not breached the Agreement and had obtained the correct insurance, because National Union's policy designated itself as "primary." Songer filed a renewed motion for summary judgment, identifying its damages as Doherty's settlement amount and related defense costs, as well as the litigation expenses of the current suit.

National Union filed a motion to substitute as third-party plaintiff, claiming it had become the real party in interest by paying Doherty's claim. FIL subsequently filed for subrogation on the same grounds. Finally, Songer and FIL moved for leave to file a second amended third-party complaint, asserting a contractual right to attorneys' fees from Morrison.

## C. Decision of the District Court

### 1.

The district court first addressed whether the contract required Morrison to purchase an insurance policy that would have covered Doherty's claim. Examining the language of the Agreement, the district court noted that it required that the purchased coverage "extend to injuries 'sustained in any manner incident to the work governed by [the] Agreement,' not just [to] injuries 'caused by' the work." R.44 at 5. The court recognized that the contract was limited to "work governed by the agreement," which is further defined as "all work performed by Subcontractor at the request of or on behalf of Contractor during the term of the agreement." *Id.* Nevertheless, continued the court, this definition of the covered work in no way limits the contract's explicit coverage to all injuries sustained incident to the work performed by Morrison, regardless of whose employees caused the injuries.

When Songer moved for summary judgment, it only included the insurance count. The potential invalidity of the indemnification provision does not affect the enforceability of the insurance provision because, under Indiana case law, the two are separate provisions applying in separate circumstances. *See, e.g., Indiana Erectors, Inc. v. Trustees of Ind. Univ.*, 686 N.E.2d 878, 880 (Ind.Ct.App. 1997); *Morsches Lumber, Inc. v. Probst*, 180 Ind.App. 202, 388 N.E.2d 284, 287 (1979). Therefore, because the insurance provision is the issue on appeal, this opinion only addresses the insurance aspect of Songer's claim.

1. Songer originally filed its third-party complaint against Morrison under an indemnification provision in the Agreement. However, an Indiana statute, Ind.Code § 26–2–5–1 (1985), may void the applicable indemnification provision. Therefore, Morrison moved to dismiss for failure to state a claim based on this statutory provision. However, before the court ruled on the motion, Songer amended its third-party complaint to extend to both the indemnification and insurance provisions of the Agreement. Thereafter, the court denied Morrison's motion to dismiss, stating the parties did not provide enough law or facts for the court to determine if the statute applied in this case.

The district court opined that the Agreement required that the insurance policy purchased by Morrison should have covered injuries to any person in any manner incident to Morrison's work, regardless of whether employees of Morrison or Songer caused the injury. Therefore, the policy should have covered Doherty's claim. Because Doherty was working for Morrison at the time the injury occurred, the injury was incident to the work of Morrison, even if Morrison's own work or its employees did not directly cause the injury. Thus, Morrison breached the Agreement because it did not obtain insurance covering Doherty's claim.

## 2.

In a subsequent order, the district court addressed the consequences of Morrison's breach of the obligation to purchase insurance to cover the accident.

The district court began its analysis by acknowledging that, as a general proposition, the remedy for breach of contract is to put the plaintiff in the position that it would have been in but for the breach. In the context of a breach of contract to procure insurance, continued the court, the measure of damages ought to be the amount that would have been due under the policy that·should have been obtained. The district court held, however, that these general propositions were not appli-

cable in this case because of the operation of another rule of contract law: that damages must not be based on speculation. In the court's view, if Morrison had obtained the required insurance policy, it still would not be clear that that policy, rather than National Union's, and thus FIL's as reinsurer, would have paid the claim. National Union's policy recited that it was "primary";[2] this designation, the court concluded, made it "highly likely that [National Union and thus] FIL would have had to pay in full or at best share coverage with the other insurer." R.79 at 5. Therefore, the inability of Songer to prove damages from the breach deprived Songer of a claim against Morrison, and thus denied FIL the right to contractual subrogation.

The district court also dismissed FIL's argument of equitable subrogation—when one party, not acting as a volunteer, pays the debt of another party even though the other party was primarily liable and should have paid the debt. In the court's view, Songer, not Morrison, was primarily liable because its negligence had caused Doherty's injury, and thus FIL, as the payor, did not have a right to equitable subrogation.

## 3.

Finally, the district court denied Songer/FIL's motion to file a second amended

---

2. National Union's policy designates itself as the "primary" policy except for 4 exceptions, which are not applicable here. Furthermore, the policy addresses the situation where National Union's insurance is not the only insurance.

 4. Other Insurance.

 If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A [bodily injury and property damage liability] or B [personal and advertising injury liability] of this Coverage Part, our obligations are limited as follows:

 a. Primary Insurance.

 This insurance is primary except when b below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all

that other insurance by the method described in c below.

 b. Excess Insurance.

 . . .

 When this insurance is excess, we will have no duty under Coverages A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers. When this insurance is excess over other insurance, we will pay only our share of the amount of the loss. . . .

R.60, Ex.C at 11.

 The district court states that National Union, and thus FIL, probably would have paid Doherty's claim in full, or at least in part, because of the policy's "primary" designation.

third-party complaint because the proposed complaint appeared to add a new claim for attorneys' fees. Stating that the request arrived too late—the claim had been pending almost three years, the pretrial conference was over, and the summary judgment motions were already fully briefed—and without adequate justification, the court denied the request for the amendment without further discussion.

## II

## DISCUSSION

### A. Breach of Contract

As did the district court, we turn first to whether Morrison breached its contract in failing to procure insurance to cover Doherty's claim.

 In reviewing the district court's grant of summary judgment, we review its determination de novo, construing the facts in the light most favorable to the nonmoving party and according that party all inferences to be drawn from the evidence. *See Kaniff v. Allstate Ins. Co.*, 121 F.3d 258, 262 (7th Cir.1997); *see also Sweat v. Peabody Coal Co.*, 94 F.3d 301, 304 (7th Cir.1996) ("We review a district court's grant of summary judgment de novo, drawing our own conclusions of law and fact from the record before us."). When interpreting a contract, we ascertain the intent of the parties at the time they made the contract as expressed by the language used in writing the contract. If any terms are ambiguous or uncertain, then extrinsic evidence and rules of contract construction may be used to facilitate interpretation. *See Rieth–Riley Constr. Co. v. Auto–Owners Mut. Ins. Co.*, 408 N.E.2d 640, 645 (Ind.Ct.App.1980).

 In our view, the plain wording of the contract makes clear the intent of the parties. The pertinent provision reads:

> Subcontractor shall maintain ... in full force and effect throughout the entire term of this Agreement, insurance coverage ... insuring ... Subcontractor's, Contractor's and/or Contractor's agents, servants' and employees' liability to pay for any bodily injuries or death received or sustained by any person or persons, including employees of Contractor, *in any manner caused by, arising from, incident to, connected with, or growing out of the work governed by this Agreement....*

R.17, Ex.A at 14 (emphasis added). The phrases preceding "work governed by this Agreement" extend Morrison's insurance obligation to include injuries negligently caused by Songer's employees but affecting Morrison's employees employed in work for Morrison. As the district court noted, the Agreement's scope covered "injuries '*caused by* the work governed by [the] Agreement.'" R.44 at 4. However, the Agreement also employed "other terms that (1) denote a relationship between injury and [Morrison's] work less direct than 'causation' per se, and (2) pointedly embrace the situation where [Songer's] employees caused the injury." *Id.* at 4–5. To give effect to each word used in the contract, "incident to" would need a definition different than "caused by" or "arising from," given that Indiana courts "will make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless." *Indiana–American Water Co. v. Town of Seelyville*, 698 N.E.2d 1255, 1259 (Ind.Ct.App.1998). *See also Bicknell Minerals, Inc. v. Tilly*, 570 N.E.2d 1307, 1316 (Ind.Ct.App.1991) (same).

By using the phrase "incident to ... work governed by this Agreement,"[3] the

---

3. Definitions of incident include: "Used both substantively and adjectively of a thing which, either usually or naturally and inseparably, depends upon, appertains to, or follows another that is more worthy." *Black's Law Dic-* *tionary* 686 (5th ed.1979); (noun) "something dependent on or subordinate to something else of greater or principal importance" or (adjective) "occurring or likely to occur esp. as a minor consequence or accompaniment;

language of the policy extends the liability coverage beyond what injuries Morrison caused to include any injuries related to Morrison or Morrison's work. Additionally, Morrison agreed to cover Songer's employees for their negligence; this phrase makes clear that the intent of the parties was to effect wide liability coverage. In short, the district court was on solid ground in concluding that Morrison was obligated to procure insurance that would have covered Doherty's claim and that its failure to purchase that insurance was a breach of that duty.

## B. Damages

 The district court took the view that, despite Morrison's breach of the Agreement with Songer, Morrison should not be held liable for the resultant loss because such damages were speculative. On this point, we find ourselves in respectful disagreement with our colleague in the district court. In our view, central to a resolution of this issue is the principle that parties may shift, by contract, their burdens of risk, and therefore affect the obligations of their insurers. *See American Underwriters, Inc. v. Auto–Owners Mut. Ins. Co.*, 454 N.E.2d 876, 877 (Ind.Ct.App. 1983). The Agreement between Morrison and Songer effected just such a reallocation of risk. Therefore, Morrison's insurance was intended by the parties to cover the risk of Doherty's injuries and the resulting settlement costs. *See Indiana Erectors, Inc. v. Trustees of Indiana Univ.*, 686 N.E.2d 878, 880 (Ind.Ct.App.

1997) (holding that an agreement to insure equals an agreement to provide both parties with the benefits of insurance, regardless of who caused the loss); *Morsches Lumber, Inc. v. Probst*, 180 Ind.App. 202, 388 N.E.2d 284, 287 (1979) (stating that when parties contract for one party to provide insurance for both, the parties assume "the insurance will protect both of them regardless of the cause of the loss.... If that [was] not their intent, each would provide his or its own insurance protection and there would be no need for the contract to place the duty on one of them.").

Indeed, *Rieth–Riley Construction Co. v. Auto–Owners Mutual Insurance Co.*, 408 N.E.2d 640 (Ind.Ct.App.1980) controls this point. In *Rieth–Riley*, the truck lessee was obligated to procure public liability insurance for the truck, which it failed to do. Instead, the truck owner's insurer covered the settlement in question. The court determined that the measure of damages for failure to procure a policy of insurance is the amount which would have been due under the policy that should have been obtained. *See id.* at 646; *see also Bulla v. Donahue*, 174 Ind.App. 123, 366 N.E.2d 233, 237 (1977) (holding that "the measure of damages in an action based on failure to procure a policy of insurance is the amount which would have been due under the policy that should have been obtained" when an agent failed to procure insurance for the principal).[4]

The *Rieth–Riley* decision controls the current case. Here, the parties contracted

dependent on or relating to another thing in law." *Merriam–Webster's Collegiate Dictionary* 587 (10th ed.1999); "associated or naturally related or attaching; archaic: occurring accidentally and without essential relationship; law: dependent on or appertaining to another thing: directly and immediately relating to or involved in something else though not an essential part of it." *Webster's Third New International Dictionary* (unabridged) 1142 (3rd ed.1981).

**4.** *Cf. Carrier Agency, Inc. v. Top Quality Bldg. Prods., Inc.*, 519 N.E.2d 739, 743 (Ind.Ct.App. 1988) (recognizing that in Indiana if an insurance agent undertakes to procure insurance

for another, but negligently fails to do so, he may be liable for either breach of contract or negligence, and the measure of damages is the amount that would have been due under the policy had it been obtained); *Nahmias Realty, Inc. v. Cohen*, 484 N.E.2d 617, 620 (Ind.Ct.App.1985) (stating that damages for an insurance agent's failure to procure an insurance policy is the amount that would have been due under the policy that should have been obtained). *See generally Steward v. City of Mt. Vernon*, 497 N.E.2d 939, 942 (Ind. Ct.App.1986) ("[I]f an agent undertakes to procure insurance and through his neglect and fault fails to do so, he is liable to his principal for any damage resulting there-

for Morrison to provide insurance for Songer, but Morrison breached its obligation. Instead, Songer's insurer paid the settlement costs to Doherty. In following the *Rieth–Riley* precedent, Songer's measure of damages is, therefore, the amount that would have been due under the policy Morrison should have obtained—Doherty's settlement costs and related expenses.

## C. Subrogation

We believe that principles of both contractual and equitable subrogation suggest FIL's maintenance of the claim against Morrison.

■■■■ Although the doctrine of subrogation is founded in equity, Indiana recognizes the enforceability of contractual subrogation. *See Erie Ins. Co. v. George*, 681 N.E.2d 183, 188 (Ind.1997). Subrogation allows for the substitution of an insurer for the insured in claims against a third party. *See id.* at 186. The issue of contractual subrogation hinges on the determination of Morrison's liability for breach of the contract. Because Songer can establish that Morrison's breach of the Agreement resulted in a readily ascertainable loss, Songer's insurers, National Union and FIL—having paid Doherty's claim on Morrison's behalf—are contractually subrogated to Songer's claim against Morrison.

■■■■ However, even if National Union and FIL's contractual right to subrogation failed, they could substitute for Songer under the doctrine of equitable subrogation. Equitable subrogation " '[is founded] upon principles of equity and is applicable in every instance in which one party, not a mere volunteer, pays the debt of another which, in good conscience, should have been paid by the one primarily liable.' " *First Fed. Sav. Bank of Wabash v. United States*, 118 F.3d 532, 533–34 (7th Cir.1997) (quoting *Loving v. Ponderosa Sys., Inc.*, 479 N.E.2d 531, 536 (Ind.1985)). National Union and FIL are not volunteers; they contracted with Songer to provide insurance coverage. Moreover, as we have noted earlier, Songer is not primarily liable. Although its employees were the tortfeasors in the underlying incident, Songer previously had contracted in the Agreement to have the subcontractor, Morrison, bear the primary loss for such an incident. Therefore, by its breach, Morrison is the party primarily liable, and National Union and FIL should be allowed to substitute for Songer in its claim against Morrison.

## D. Leave to Amend

■■■■ Lastly, we turn to the district court's denial of Songer/FIL's motion for leave to file a second amended third-party complaint. The standard of review for such a decision is abuse of discretion.[5]

Under the Federal Rules of Civil Procedure, Rule 15, if the court's leave is re-

---

from."); *Stockberger v. Meridian Mut. Ins. Co.*, 182 Ind.App. 566, 395 N.E.2d 1272, 1279 (1979) ("If the agent undertakes to procure the insurance and through fault and neglect fails to do so, the agent or broker may be liable for breach of contract. . . .").

**5.** *See Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 773–74 (7th Cir.1995) (upholding the denial of leave to amend because the amendment would force the opposing party to relitigate the dispute on new bases and to endure additional and costly discovery, resulting in undue delay and prejudice); *Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir.1994) (deciding to uphold the district court's denial of leave to amend because the movants sought to add an entirely new claim after discovery had been completed and the summary judg-

ment motions briefed); *Johnson v. Methodist Med. Ctr. of Ill.*, 10 F.3d 1300, 1303–04 (7th Cir.1993) (refusing the amendment because it would add new actors and new actions, thus taking the opposing party by surprise, forcing it to perform additional discovery, and essentially requiring it to engage in a new suit on different issues, four years after the original action was filed), *cert. denied*, 511 U.S. 1107, 114 S.Ct. 2102, 128 L.Ed.2d 664 (1994); *Textor v. Board of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1391 (7th Cir.1983) (holding that delay is a sufficient basis to deny a leave to amend only if the delay caused undue prejudice to the opposing party); *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 339 (7th Cir.) (stating that "absent a showing of prejudice, a mere delay in the commencement of the ac-

quired to amend the pleadings, "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Several considerations counsel that the district court revisit this aspect of the case on remand. Although the court understandably did not explain at length its reasons for denying leave, it is clear that a major factor in the court's decision was the lateness of the request and the lack of an adequate explanation as to why the request had come as late as it had.

In assessing the lateness of the request, the court did not articulate whether such tardiness had, in the court's view, resulted in undue prejudice to Morrison. Certainly, the degree of prejudice to the opposing party is a significant factor in determining whether the lateness of the request ought to bar the filing. Here, the amended complaint seeks the attorneys' fees allowed by the contractual provision. We cannot see how, on this record, the request would result in unfair surprise for Morrison or require the expenditure of additional resources on the part of the parties or the court. Therefore, we remand for the court below to consider if the delay in Songer/FIL's amendment would unduly prejudice Morrison.

## Conclusion

For the foregoing reasons, we affirm the district court's grant of summary judgment for Songer on the issue of breach of contract, but reverse and remand, for reconsideration in accordance with this opinion, on the issues of damages, subrogation, and leave to amend. Songer may recover its costs in this court.

AFFIRMED in part, REVERSED and REMANDED in part

tion should not ordinarily operate to preclude a motion to amend the complaint" and holding that the addition of the officers and directors of defendant corporation did not un-

fairly surprise and prejudice those parties), *cert. denied,* 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666 (1974).