**ROYAL INSURANCE COMPANY OF AMERICA, Plaintiff,**

v.

**NATIONAL UNION FIRE INSURANCE CORPORATION OF PITTSBURGH, Defendant.**

**No. 2:00–CV–508.**

United States District Court, N.D. Indiana, Hammond Division.

Feb. 11, 2002.

See also, 195 F.3d 919.

Larry G. Evans and Tina M. Bengs, Hoeppner, Wagner & Evans, Valparaiso, IN, for Plaintiff.

Melinda S. Kollross, Clausen Miller PC, Chicago, IL, for Defendant.

## ORDER

LOZANO, District Judge.

This matter is before the Court on the 1) Motion for Summary Judgment of National Union Fire Insurance Corporation of Pittsburgh, PA; and 2) Plaintiff's Motion for Summary Judgment, both filed on August 1, 2001. For the reasons set forth below, the Motion for Summary Judgment of National Union Fire Insurance Corporation of Pittsburgh, PA is **GRANTED**; Plaintiff's Motion for Summary Judgment is **DENIED**. As no claims remain pending before this Court, the Clerk is **ORDERED** to close this case on this Court's docket.

### BACKGROUND

This matter arises from the underlying case, *Doherty v. Davey Songer, Inc.*, 2:95–CV–67, previously resolved by this Court and subsequently the Seventh Circuit Court of Appeals. In 1994, Morrison Construction Company, Inc. (Morrison) subcontracted with Davey Songer, Inc. (Songer) to perform pipefitting work at Bethlehem Steel. Under the subcontract agreement (Agreement), Morrison was to obtain insurance, covering both Songer and Morrison, for bodily injuries "caused by, arising from, incident to, connected with, or growing out of the work governed by this Agreement." (Pl.'s Ex. A, ¶ 15.2) Consequently, Morrison was issued insurance policy No. PTS–435889 by Royal In-

surance Company (Royal). This policy was in effect from February 1, 1994, through February 1, 1995. Pursuant to the Agreement, Songer was covered as an additional insured under the Royal policy.

In October 1994, two of Songer's employees negligently injured Thomas Doherty (Doherty), a Morrison employee, in an accident that occurred at the job site. In February 1995, Doherty filed a complaint against Songer seeking damages for alleged personal injuries sustained in the October 1994 accident. Songer conceded that its employees were responsible for Doherty's alleged injuries. Songer then filed a third-party complaint against Morrison for indemnification pursuant to the Agreement. Doherty's claim was submitted to Royal, but Royal denied the claim stating that, "the injury was caused out of a millwright's work and not out of the work Morrison Construction was engaged in on behalf of Davey Songer." (Pl.'s Ex. 4)

In September 1997, Doherty settled his claims against Songer for $225,000. Songer had general liability insurance through National Union Fire Insurance Corporation of Pittsburgh (National). As a result of Royal denying the claim, Songer obtained indemnity coverage through its National policy; National paid the liability costs on behalf of Songer as well as defense costs incurred.

In 1999, the Seventh Circuit, in *Doherty v. Davy Songer, Inc.*, 195 F.3d 919 (7th Cir.1999), found that the Agreement was to extend to, not only any injuries Morrison caused, but also any injuries related to Morrison or Morrison's work. *Doherty*, 195 F.3d at 926. Thus, the court of appeals found that Morrison agreed to insure Songer's employees for their negligence. *Id.* Therefore, the Seventh Circuit held that Morrison was obligated to procure an insurance policy that would have covered Doherty's claim and failure to do so

amounted to a breach of contract. *Id.* Subsequently, Royal determined that Morrison's policy did in fact cover Songer's liability for the injuries suffered by Doherty. In June 2000, a settlement was reached in which Royal paid National $325,000 in exchange for releasing Morrison from any further liability arising out of *Doherty*. Royal, however, reserved the right to file a declaratory judgment action to recover any or all of the settlement amount.

In August 2000, Royal filed a complaint against National seeking a declaratory judgment. Royal seeks contribution from National for one-half of the settlement amount arising out of the Doherty personal injury suit. The parties agree that there is no disputed genuine issues of material fact and both parties have moved for summary judgment in this matter.

*DISCUSSION*

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir.1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *NUCOR Corp.*

*v. Aceros Y Maquilas de Occidente*, 28 F.3d 572, 583 (7th Cir.1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Becker v. Tenenbaum–Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir.1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir.1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir.1988) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir.1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir.1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be " 'no genuine issue as to any material fact', since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

Where, as here, jurisdiction is premised upon diversity of citizenship, 28 U.S.C. section 1332, the federal district court must apply the substantive law of the forum state. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In this case, therefore, the law of the State of Indiana is controlling.

*Jurisdiction*

■ National asserts that there is no actual controversy between the parties, and thus, this Court lacks jurisdiction in this matter. A declaratory judgment action requires the existence of an actual controversy. 28 U.S.C. § 2201; *Alcan Aluminium, Ltd. v. Dept. of Revenue*, 724 F.2d 1294, 1298 (7th Cir.1984). Plaintiff has the burden of proving jurisdiction exists by showing that an actual controversy existed the time of the filing of the complaint. *International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir.1980).

■ In this case, Royal reimbursed National for the defense and settlement of the underlying suit. In the settlement agreement between Royal and National, Royal reserved its right to seek any potential subrogation or indemnification. (Def.'s Ex. 30) National argues that Royal's voluntary payment does not create a controversy. However, this case does not wholly involve the underlying settled personal injury suit. Instead, this case focuses on the potential contribution liability of National. This creates an actual controversy because Royal's contribution claim incorporates the parties' contractual allocations of liability. *GNB Battery Technologies, Inc. v. Gould, Inc.*, 65 F.3d 615, 621 (7th Cir.1995); *Michael v. Albright*, 126 Ind. 172, 25 N.E. 902 (1890).

*Contribution*

Royal claims that the terms of both Royal's and National's insurance policies

provided primary coverage for Songer's liability. Royal further asserts that both policies provide for contribution by equal shares when two policies provide primary coverage for the same loss. Thus, Royal concludes that based on the terms of the two involved insurance policies it is entitled to contribution from National as a result of the $325,000 reimbursement paid to National.

Conversely, National presents two arguments why Royal is not entitled to such contribution. First, National contends that the Seventh Circuit's decision in the underlying case, *Doherty*, has already considered and denied Royal's contribution claim. Second, National argues that even if the Seventh Circuit has not foreclosed Royal's contribution claim, the Agreement allocated the entire risk of loss to Morrison alone.

Royal bases its contribution claim on the language provided in the insurance policies. Before the actual language of the policies can be examined, however, this Court must first turn its attention to the Agreement between Morrison and Songer.

■ Agreements which impose upon one party the duty to provide insurance have been construed to benefit both parties. *Morsches Lumber, Inc. v. Probst*, 180 Ind.App. 202, 388 N.E.2d 284, 286 (1979). In such commercial agreements, a provision that one party will maintain insurance against certain risks indicates an intention to grant immunity to the other party from liability. *Id.* Thus, the party who agreed to purchase insurance has no cause of action against the party for whose benefit the insurance was intended regardless of the fault of the intended insured. *Indiana Erectors, Inc. v. Indiana Univ.*, 686 N.E.2d 878, 880 (Ind.Ct.App.1997). As the rights of the subrogated insurer can rise no higher than the rights of its insured, the first party's insurance carrier has no subrogation cause of action against the intended insured. *Id.* Accordingly, under Indiana law, "where insurance is purchased pursuant to an agreement, the risk of loss is shifted away from the parties to the agreement and the insurance company accepting that risk is not entitled to receive contribution from the negligent party's insurance company." *Indiana Ins. Co. v. Granite State Ins. Co.*, 689 F.Supp. 1549, 1559 (S.D.Ind.1988) (citing *American Underwriters, Inc. v. Auto–Owners Mut. Ins. Co.*, 719 F.2d 900, 902 (7th Cir.1983); *South Tippecanoe School Bldg. Corp. v. Shambaugh & Son, Inc.*, 182 Ind.App. 350, 395 N.E.2d 320 (1979)).

■ In this case, as part of the Agreement, Songer and Morrison entered into a contract whereby Morrison agreed to obtain insurance that included Songer as an insured. While not dispositive of the issue in this case, the Seventh Circuit's opinion in *Doherty* provides guidance into the substance of Morrison's and Songer's Agreement.[1] In *Doherty*, the Seventh Circuit found that the plain wording of the Agreement made clear the intent of Songer and Morrison. *Doherty*, 195 F.3d at 925. The parties intended for Morrison to procure insurance to cover the type of injuries

---

1. Article 15.2 provides in relevant part: Subcontractor shall ... in full force and effect throughout the entire term of this Agreement, insurance coverage ... Subcontractor's, Contractor's and/or Contractor's agents', servants', and employees' liability to pay for any and all loss, damage and injury to the property of any and all persons in any manner caused by, arising from incident to, connected with, or growing out of the work governed by this Agreement, the use of machinery, equipment, or vehicles on Contractor's and/or Owner's premises, and/or activities upon, or the condition of Contractor's and/or Owner's land, buildings, facilities, machinery, equipment, or vehicles ....

suffered by Doherty. *Id.* Royal does not dispute that it is liable for Doherty's injuries. What is in dispute is whether Songer's other primary insurer, National, is liable for one-half of the contribution of the settlement.

To this issue, this Court receives further guidance from the Seventh Circuit's aforementioned opinion. In examining the Agreement, the court of appeals recited Indiana precedent and started with the premise that, "parties may shift, by contract, their burdens of risk, and therefore the obligations of their insurers." *Doherty*, 195 F.3d at 926. The court concluded that the Agreement effected such a reallocation of risk. *Id.* Therefore, the court stated, "Morrison's insurance was intended by the parties to cover the risk of Doherty's injuries and the resulting settlement costs." *Id.* In fact, the Seventh Circuit went so far as to opine, "Morrison is responsible for resulting damages, even though Songer also holds its own general liability insurance that covers the claim." *Id.* at 922.

The aforementioned leads this Court to the conclusion that, not only was the Royal policy to insure the type of injury suffered by Doherty, but Morrison and Songer contractually shifted the obligations of their respective insurers. As a result, Royal would be the primary insurer covering Songer's liability in the underlying personal injury suit. *See American Underwriters*, 719 F.2d at 902.

The view adopted by this Court finds further support in the *Doherty* case. The court of appeals unequivocally stated that Songer was not primarily liable in the underlying case. *Doherty*, 195 F.3d at 927. Even though its employees were the tortfeasors, "Songer previously had contracted in the agreement to have the subcontractor, Morrison, bear the primary loss for such an instance." *Id.* Therefore,

the Seventh Circuit stated, "Morrison is the party primarily liable." *Id.*

■ Morrison's agreement to provide insurance against the type of negligent act which injured Doherty, was to make Songer immune from liability. *Indiana Erectors*, 686 N.E.2d at 880. As Songer was to be immune from liability, it logically flows that under Indiana law, Songer's insurance company was to be protected from liability as well. *Indiana Ins.*, F.Supp. at 1559. Therefore, since Morrison shifted the burden of its, as well as Songer's insurance company, National is not liable for the damages incurred by Doherty. Indiana law is clear that private agreements, while they cannot expand coverage, can foreclose an insurer who has paid a loss pursuant to its policy from pursuing others for contribution. *American Underwriters*, 719 F.2d at 902; *South Tippecanoe School*, 182 Ind. App. 350, 395 N.E.2d 320. The Seventh Circuit found that Morrison and Songer entered into such an agreement. Accordingly, this Court finds that Royal, being subject to the agreement and having paid the loss pursuant to its policy, is not entitled to any contribution from National.

As this Court finds that Royal is not entitled to any contribution from National due to Morrison and Songer's agreement, this Court need not examine National's proffered affirmative defenses.

## CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment of National Union Fire Insurance Corporation of Pittsburgh, PA is **GRANTED**; Plaintiff's Motion for Summary Judgment is **DENIED**. As no claims remain pending before this Court, the Clerk is **ORDERED** to close this case on this Court's docket.