**CONTINENTAL INSURANCE CO., National Fire Insurance Company of Hartford, Continental Casualty Company, and Columbia Casualty Company, Appellants,**

v.

**WHEELABRATOR TECHNOLOGIES, INC., and Waste Management Holdings, Inc., Appellees.**

No. 49A02–1010–PL–1110.

Court of Appeals of Indiana.

Dec. 6, 2011.

Rehearing Denied Feb. 10, 2012.

---

Mary K. Reeder, Riley Bennett & Egloff, LLP, Indianapolis, IN, David E. Schoenfeld, Patrick T. Nash, Tawfiq L. Ali, Grippo & Elden, LLC, Chicago, IL, for Attorneys for Appellants Continental Insurance Co., National Fire Insurance Company of Hartford, Continental Casualty Company, and Columbia Casualty Company.

James P. Ruggeri, Shipman & Goodwin, LLP, Washington, D.C., Donald B. Kite, Sr., Gonzalez Saggio & Harlan LLP, Indianapolis, IN, for Attorneys for Appellants Hartford Accident and Indemnity Company, First State Insurance Company, and Twin City Fire Insurance Company.

Fred R. Biesecker, Brent W. Huber, Ice Miller, LLP, Indianapolis, IN, Joseph P. Thacker, Andrew W. Miller, Thacker Martinsek LPA, Perrysburg, OH, for Attorneys for Appellees Wheelabrator Technologies Inc., and Waste Management Holdings, Inc.

George M. Plews, Jeffrey D. Featherstun, Josh S. Tatum, Sean M. Hirschten, Plews Shadley Racher & Braun, LLP, Indianapolis, IN, for Attorneys for Amici Curiae Indiana Petroleum Marketers and Convenience Store Association and National Solid Waste Management Association.

## OPINION

MATHIAS, Judge.

Wheelabrator Technologies, Inc. ("WTI") and Waste Management Holdings, Inc. ("Waste Management") (collectively "Waste") sued a large number of insurance companies (collectively "the In-

surers")[1] seeking insurance coverage for underlying asbestos and mixed dust-related claims. In this interlocutory appeal, the Insurers appeal the Marion Superior Court's order denying their motion for summary judgment in connection with Waste's second amended and supplemental complaint. On appeal, the Insurers present a number of issues, which we consolidate and restate as the following: whether the trial court erred in determining that Waste might be entitled to coverage under the Insurers' policies.

We reverse and remand for proceedings consistent with this opinion.

### Facts and Procedural History

As noted in the Hartford Brief, the corporate history of the entities concerned in this appeal is "extraordinarily complex."[2] Hartford Brief at 5. Most relevant to this appeal, however, is the 1986 transaction in which Allied–Signal, now Honeywell International ("Honeywell"), sold the assets and liabilities of its baghouse[3] process to Waste's predecessor. Prior to 1986, the Insurers issued occurrence-based insurance policies to Honeywell's predecessor in interest.[4] The policies ("the pre–1986 policies") provided coverage for injuries caused by airborne particles that were produced from a baghouse used to reduce harmful dust accumulated in connection with the Wheelabrator blast machine business. Since 1986, Waste has been sued by claimants who alleged that they incurred injuries prior to 1986 while working for the baghouse division ("the Baghouse Claims").[5]

---

1. Two appellants briefs have been filed in connection with this appeal. The first brief (the "Continental Brief") was filed by Columbia Casualty Co., Continental Casualty Co., Continental Insurance Co. (for itself, as successor-by-merger to Fidelity & Casualty Company of New York, as successor-in-interest to Harbor Insurance Co. as to certain policies issued by Harbor, and as successor-in-interest to Centre Insurance Co. as to a certain policy issued by London Guarantee & Accident Insurance Co. of New York) and National Fire Insurance Co. of Hartford (as successor-by-merger to Transcontinental Insurance Co.). The following appellants joined in the Continental Brief: Allstate Insurance Co. (solely as successor-in-interest to Northbrook Excess and Surplus Insurance Co. f/k/a Northbrook Insurance Co.), Century Indemnity Co., Employers Mutual Casualty Co. by its managing general agent and attorney-in-fact, ProSight Specialty Management Co., Inc., formerly Mutual Marine Office, Inc., Federal Insurance Co., Old Republic Insurance Co., St. Paul Mercury Insurance Co., Travelers Casualty and Surety Co., Westchester Fire Insurance Co., and Zurich International (Bermuda), Ltd. The second brief (the "Hartford Brief") was filed by Hartford Accident and Indemnity Co., First State Insurance Co., and Twin City Fire Insurance Co.

2. Briefly, Wheelabrator–Frye, Inc. merged into Signal Applied Technologies, Inc., which itself was a subsidiary of The Signal Companies, Inc. In 1985, Signal Applied Technologies combined with Allied Corporation to become subsidiaries of a new parent corporation, Allied–Signal, Inc., and both companies later merged into their corporate parent, Allied–Signal. In 1986, Allied–Signal spun off the assets of the former Wheelabrator–Frye to the Henley Group, which was set up to facilitate the spin-off. Allied–Signal later became Honeywell International, Inc., and the Henley Group was renamed the Wheelabrator Group. The Wheelabrator Group was then renamed Wheelabrator Technologies, Inc. In 1990, Waste Management Holdings, Inc. acquired Wheelabrator Technologies. And in 1996, Wheelabrator Technologies sold some of the former Wheelabrator–Frye assets to the United States Filter Corporation.

3. A "baghouse" is "a large building containing several large, fabric filters which trap particulate matter and dust but allow air to pass through to a stack." *Ind. Dep't of Envtl. Mgmt. v. Steel Dynamics, Inc.*, 894 N.E.2d 271, 273 (Ind.Ct.App.2008), *trans. denied.*

4. For purposes of clarity, we will refer to all of Honeywell's predecessors as "Honeywell."

These pre–1986 policies have been the subject of two cases involving largely the same parties and policies, which have been litigated concurrently in the Marion Superior Court. The first of these cases was commenced on June 8, 2004, and Waste later intervened in that action, which culminated in our supreme court's decision in *Travelers Casualty & Surety Co., Inc. v. United States Filter Corp.*, 895 N.E.2d 1172 (Ind.2008) ("*U.S. Filter*"). The second of these cases, which was commenced by Waste on March 9, 2007, has resulted in the instant appeal. In this case, Waste brought suit against the Insurers seeking coverage for the Baghouse Claims. The proceedings in the present case were stayed pending our supreme court's decision in *U.S. Filter*.

In *U.S. Filter*, Waste sought coverage from a group of insurers for product liability claims related to the Wheelabrator blast machine business ("Blast Machine Claims"), which, like the baghouse business at issue, Waste acquired from Honeywell in the 1986 transactions. *See* 895 N.E.2d at 1175–77. Waste asserted coverage under the same pre–1986 policies at issue here, which had been issued to Honeywell and its predecessors, but not to Waste. *See id.* Waste and the insurers cross-moved for summary judgment as to whether Waste had any rights under the pre–1986 policies. *See id.* at 1176. Reversing the decision of the trial court, the essence of which this court affirmed on appeal, the Indiana Supreme Court ultimately rejected Waste's claims to coverage under the pre–1986 policies and held that the insurers were entitled to judgment as a matter of law. *Id.* at 1181.

Waste raised many legal theories in support of its argument that it was entitled to coverage under pre–1986 policies. Pertinently, Waste argued that it obtained rights by assignment as part of the 1986 transactions ("1986 Agreement"), and, alternatively, that insurance rights transferred by operation of law "by virtue of having succeeded to the historical liabilities of that business." Appellants' App. at 3012; *see also* Appellants' App. p. 3083.

Our supreme court rejected Waste's arguments and held that Waste obtained no rights under the pre–1986 policies, whether by assignment, by operation of law, or otherwise. *U.S. Filter*, 895 N.E.2d at 1181. The court held that the policies were not transferred to Waste in the 1986 transactions because the policies contained consent-to-assignment clauses, and Waste had failed to obtain the insurers' consent. *Id.* at 1174. Our supreme court held that "consent-to-assignment provisions ... apply to coverage transfers of any scope[.]" *Id.* at 1180. The court further noted that this "seems to leave [Honeywell] holding title to all of the insurance policies written for its predecessors in interest[.]" *Id.* at 1177 n. 4.

In rendering its decision, our supreme court recognized a very narrow exception to the requirement of insurer consent, and stated:

> We hold that consent is required for any assignment of policy rights, unless the assignment occurs after an identifiable loss, in which case the right to receive payment on that claim may be transferred without consent. Because the corporations neither obtained consent nor made a post-loss assignment, we direct judgment for the insurers.

---

**5.** There are approximately thirteen Baghouse Claims. One claim is pending, and the other twelve have been resolved. Of the twelve resolved claims, one was settled almost a decade ago for $100,000, and the other eleven were all dismissed.

*Id.* at 1174. The court noted that an assignable post-loss chose in action arises only when, "[a]t a minimum," the loss is "identifiable with some precision" and is "fixed, not speculative." *Id.* at 1180. The court further held that a chose in action arises only to the extent that *the policyholder* has its own cause of action for coverage from its insurers:

> A right not currently held is not a chose in action assignable at law. It follows that a chose in action only transfers in these circumstances if it is assigned at a moment when the *policyholder* could have brought its own action against the insurer for coverage. Under the liability policies implicated here, that moment does not arrive until a claim is made *against the insured.* Put another way, at a minimum, the losses must have been reported to give rise to a chose in action.

*Id.* (emphasis added). Because no assignable claim had been made against the insured, i.e. Honeywell or its predecessors at the time of purported assignment, our supreme court directed entry of judgment against Waste on all pre–1986 policies. *Id.* at 1181.

On July 22, 2009, after the stay in the present case was lifted, defendant Travelers Casualty and Surety Company ("Travelers") filed a motion for summary judgment on Waste's claims under the pre–1986 policies. Certain other Insurers, including those represented in the Continental Brief, joined Travelers' motion.

Shortly thereafter, on July 29, 2009, Waste and Honeywell entered into an Agreement Regarding Insurance Coverage ("Insurance Agreement") and a Confidential Claims Handling Agreement Regarding Dust Claims ("Claims Agreement") (collectively "the 2009 Agreements"). The Claims Agreement provided that coverage under the pre–1986 policies extended to both Honeywell and Waste's subsidiary WTI, and the Insurance Agreement purports to assign Honeywell's interest in its claims against the Insurers to WTI.

On September 14, 2009, Waste filed a second amended complaint, noting that it was pleading facts that had arisen since the decision in *U.S. Filter.* Citing to rights under the 2009 Agreements, Waste alleged that "identifiable losses" with respect to the Baghouse Claims "became known after the 1986 transactions, and the corresponding right to receive payment may therefore be assigned without the [I]nsurers' consent." Appellants' App. p.1958. Waste further alleged that, under the 2009 Agreements, "Honeywell has assigned to Waste ... the right to receive payment on [the Baghouse Claims] under Policies issued by the [Insurers] prior to December 16, 1985." *Id.* Finally, Waste alleged that it "asserts the following claims as assignee under the [2009 Agreements] and as subrogee to the rights of Honeywell and its predecessors in interest" and that "pursuant to the [2009 Agreements], Waste ... has the right to receive payment on [the Baghouse Claims] under Policies issued by [the Insurers] prior to December 16, 1985." *Id.* at 1958, 1962.

In response to the Complaint, the Insurers filed supplemental summary judgment briefs concerning Waste's claims under the pre–1986 policies, arguing that neither the 2009 Agreements nor a theory of subrogation could transfer insurance rights as a matter of law.

Following a hearing, the trial court denied the Insurers' summary judgment motions, concluding that Honeywell has a current claim for coverage for the Baghouse Claims and that the "post-loss" exception to the rule announced in *U.S. Filter* applied because Honeywell's rights were assigned after the Baghouse Claims had become identifiable losses. Regarding

subrogation, the trial court held that Waste was not collaterally estopped because Waste's subrogation theory was not actually litigated or determined in *U.S. Filter* and that there was insufficient basis to establish that principles of equity and justice precluded Waste's subrogation claim.

The Insurers then timely moved to certify the trial court's order for interlocutory appeal on September 10, 2010. The trial court certified its order for interlocutory appeal on September 13, 2010. Upon motion by the Insurers, we accepted interlocutory jurisdiction and consolidated the dockets on December 3, 2010.[6]

### Standard of Review

The Insurers contend that the trial court erred in denying their motion for summary judgment. As explained by our supreme court in *U.S. Filter*:

> When reviewing a trial court's decision to grant or deny summary judgment, we apply the same standard as the trial court. We must decide whether there is a genuine issue of material fact that precludes summary judgment and, if not, whether the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). We also construe the designated evidence in a light most favorable to the nonmoving party.

895 N.E.2d at 1176 (citations omitted).

### Discussion and Decision

■ Before addressing the parties' arguments, we briefly note our role as an intermediate appellate court. It is not our role to reconsider or declare invalid decisions of the Indiana Supreme Court. *Culbertson v. State*, 929 N.E.2d 900, 906 (Ind. Ct.App.2010), *trans. denied* (citing *Horn v. Hendrickson*, 824 N.E.2d 690, 694 (Ind.Ct.

App.2005)). In fact, we are bound by our supreme court's decisions, and its precedent is binding on us until it is changed by our supreme court or legislative enactment. *Id.*

■ Nevertheless, Indiana Appellate Rule 65(A) authorizes us to criticize existing law. *Dragon v. State*, 774 N.E.2d 103, 107 (Ind.Ct.App.2002); *Meeks v. State*, 759 N.E.2d 1126, 1128 (Ind.Ct.App.2001), *trans. denied*. "Put another way, our supreme court's words and opinions are not carved in stone, and it is not inappropriate for the parties or the judges of this court to ask the court to reconsider earlier opinions." *Horn*, 824 N.E.2d at 695. Still, although we are permitted to criticize our supreme court's precedent, we exercise that privilege rarely, and solely for the purpose of urging reconsideration of the particular issue. *Meeks*, 759 N.E.2d at 1128. We need not exercise that rare privilege in this case, however. Instead, we apply the law contained in our supreme court's unanimous decision in *U.S. Filter* to the facts and circumstances before us.

Turning now to those facts and circumstances, we first note that it is undisputed that none of the pre–1986 policies were issued to Waste. Rather, all of the relevant policies were issued to Honeywell, and the policies provide coverage only for claims asserted against the named insured, and not for the claims of third parties such as Waste. Moreover, each of the pre–1986 policies contains a consent-to-assignment clause prohibiting the assignment of coverage rights absent the insurer's consent. It is also undisputed that neither Honeywell nor Waste obtained consent from the Insurers to assign the policies or any rights thereunder to Waste.

---

6. We heard oral argument in this case on August 30, 2011 in the Indiana Supreme Court Courtroom. We commend counsel for the quality of their written and oral advocacy.

Prior to the 1986 asset sale, Honeywell owned the baghouse process. Pursuant to the 1986 Agreement, WTI acquired the baghouse process. Also pursuant to the 1986 Agreement, WTI agreed "to assume, to pay, perform and discharge in due course and to defend and indemnify [Honeywell] and its subsidiaries against any and all Liabilities [with certain exceptions not relevant here], accrued or unaccured, known or unknown, whenever arising," relating to the baghouse process. Appellants' App. pp. 2825–26.

▮ Under our supreme court's decision in *U.S. Filter*, it is clear that no insurance coverage rights transferred to Waste by virtue of the 1986 Agreement. After observing that Waste assumed Honeywell's liabilities under the 1986 Agreement, the *U.S. Filter* Court concluded that the 1986 Agreement could not effectively transfer the pre–1986 policies to Waste because Honeywell did not obtain consent from the Insurers.[7] 895 N.E.2d at 1178. Our supreme court also held that "consent is required for any assignment of policy rights, unless the assignment occurs after an identifiable loss, in which case the right to receive payment on that claim may be transferred without consent." *Id.* at 1174.

Under the narrow "post-loss exception" carved out by the supreme court, an insured's loss generates an assignable coverage benefit only if the loss is fixed and not speculative. *Id.* at 1180. In other words, "the loss must be identifiable with some precision." *Id.* The court found support for its holding from the law on choses in action and insurance policies.

A right not currently held is not a chose in action assignable at law. It follows that a chose in action only transfers in these circumstances if it is assigned at a moment when the policyholder could have brought its own action against the insurer for coverage. Under the liability policies implicated here, that moment does not arrive until a claim is made against the insured. Put another way, at a minimum the losses must have been reported to give rise to a chose in action. *Id.* Ultimately, the *U.S. Filter* Court directed entry of judgment for the Insurers after concluding, "[t]o the extent the alleged Wheelabrator blast machine injuries had occurred but had not yet been reported at the time of the relevant transactions, they did not constitute an assignable chose in action." *Id.* at 1181.

▮ On appeal, Waste does not argue that it gained any right to coverage under the pre–1986 policies pursuant to the 1986 Agreement. Rather, Waste claims that it obtained coverage rights under the pre–1986 policies by virtue of the 2009 Agreements. Specifically, Waste argues that despite the expansive language of its contractual assumption of Honeywell's liabilities with regard to the Baghouse business, under the terms of the 1986 Agreement, Waste assumed liability only for Honeywell's uninsured losses. According to Waste, because Honeywell remained liable for the losses to the extent that they were covered by the pre–1986 policies, Honeywell could (and did) assign a post-loss chose in action to Waste by way of the 2009 Agreements. In support of this argument, they cite the following language

---

7. In this vein, it is important to distinguish between an asset sale, as occurred here, and a merger or consolidation. As our supreme court noted in *U.S. Filter*, "mergers and consolidations generally result in the transfer of all of the participants' assets and liabilities to the surviving corporation, including insur- ance coverage rights." 895 N.E.2d at 1177 (citing Ind.Code § 23–1–40–6 (2005 & Supp. 2011)). Asset sales, however, transfer only the assets and liabilities specifically designated and validly transferable by contract. *See id.* at 1177–78.

from sections 5.02(b) and (c) of the 1986 Agreement:

> [Waste] shall indemnify, defend and hold harmless [Honeywell], each of its directors, each of its officers and each Affiliate of [Honeywell] (other than [Waste]) from and against any and all Indemnifiable losses of [Honeywell] or any of its Affiliates (other than [Waste]) arising out of or due to, directly or indirectly, the failure of [Waste] to pay or otherwise discharge when due any of the [Waste] Liabilities.

> The amount which any party (an "Indemnifying Party") is required to pay to any other party (an "Indemnitee") pursuant to Section 5.02(a) or Section 5.02(b) shall be reduced (including, without liabilities, retroactively) by any insurance proceeds and other amounts actually recovered by such Indemnitee in reduction of the related indemnifiable loss, provided, that, if [Waste] and its subsidiaries shall have failed to maintain insurance covering an Indemnifiable loss in such amounts and against such risks as are presently maintained by [Honeywell], or any of its subsidiaries with respect to the related [Waste] Assets, to the extent that such insurance shall be available on commercially reasonable terms in the reasonable judgment of the [Waste] Board, then the amount shall be further reduced by the amount of insurance proceeds, net of costs of recovery, which could have been recovered if [Waste] or its subsidiaries had maintained such insurance.

Appellant's App. pp. 1230–31. Waste asserts that under these provisions, it assumed Honeywell's liabilities only on a "net of insurance basis."

As we noted above, in Article IV of the 1986 Agreement, Waste unequivocally agreed to assume Honeywell's liabilities, without any qualification whatsoever. *Id.* at 1224. The title of Article V of the 1986 Agreement is "Survival and Indemnification." *Id.* at 1229. In Article V, Waste agreed to indemnify Honeywell for losses Honeywell suffers if Waste fails to pay the liabilities it assumed. By this language, Waste assumed Honeywell's liabilities in full under section 4.02, and also agreed to indemnify Honeywell for any failure to pay those liabilities under section 5.02.

The language Waste relies upon to support its argument that "[t]he amount which any party . . . is required to pay to any other party . . . shall be reduced . . . by any insurance proceeds," must be interpreted within the context of Article V.[8] Within that context, it is clear that the provision simply provides that the indemnity payment is reduced to the amount of Honeywell's actual loss. Honeywell retained no liability under the 1986 Agreement; therefore its terms simply do not support Waste's "net of insurance" argument. And because Honeywell was no longer liable for the losses at issue on the date the 2009 Agreements were executed, it had no insurance rights to transfer by way of that transaction.[9] The language of

---

**8.** We have repeatedly stated that when interpreting contracts, "[w]ords, phrases, sentences, paragraphs, and sections of a contract cannot be read out of context. If possible, the entire contract must be read together and given meaning." *Avant v. Community Hosp.,* 826 N.E.2d 7, 10 (Ind.Ct.App.2005), *trans. denied.*

**9.** We also reject Waste's apparent argument that Honeywell retained liability solely by virtue of the fact that Honeywell, or its predecessors in interest, was the actual tortfeasor. Waste's unqualified assumption of Honeywell's liabilities included any liabilities that might arise from Honeywell's tortious acts. *Cf. Doherty v. Davy Songer, Inc.,* 195 F.3d 919, 927 (7th Cir.1999) (observing that where the subcontractor agreed to bear the primary loss for the incident despite the fact that contrac-

the 2009 Agreements purporting to explain Waste's intent in entering into the 1986 Agreement is a nonsensical attempt to travel back in time.

 Quite simply, we are constrained by our supreme court's *U.S. Filter* holding,[10] and Waste has not directed us to any evidence in the record or presented any argument in its briefing that would lead us to an opposite result.[11] Specifically, Waste has not designated any evidence that the Baghouse Claims were known and/or identifiable prior to execution of the 1986 Agreement. For the reasons expressed in *U.S. Filter*, those claims do not constitute an assignable chose in action. And because Honeywell was no longer liable for the Baghouse Claims on the date it entered into the 2009 Agreements, by virtue of Waste's unqualified assumption of its liabilities in the 1986 Agreement, Honeywell had no insurance coverage rights to assign to Waste as a chose in action.

For all of these reasons, we conclude that Waste is not entitled to coverage from Honeywell's Insurers for the Baghouse Claims at issue in this appeal. Accordingly, we reverse the trial court's denial of the Insurers' motions for summary judgment and remand with instructions that the trial court enter judgment for the Insurers on the coverage issues in the instant appeal.

Reversed and remanded for proceedings consistent with this opinion.

VAIDIK, J., concurs.

KIRSCH, J., dissents.

---

tor's employees were the tortfeasors, the subcontractor was the party primarily liable).

10. Arguably, many of Waste's arguments are also barred by the doctrine of collateral estoppel. Collateral estoppel bars subsequent litigation of a fact or issue which was adjudicated in previous litigation if the same fact or issue is presented in a subsequent lawsuit. *Fitz v. Rust-Oleum Corp.*, 883 N.E.2d 1177, 1182 (Ind.Ct.App.2008), *trans. denied.* The former adjudication will be conclusive in the subsequent action even if the two actions are on different claims. *Id.* "[G]enerally facts available at the time of the first suit are foreclosed in a subsequent suit, as are new arguments based on the same legal theory." *Miller Brewing Co. v. Ind. Dep't of Revenue,* 903 N.E.2d 64, 68 (Ind.2009). We have chosen to address Waste's arguments on their merits, and therefore, we decline to specifically consider the Insurers' collateral estoppel arguments.

11. Waste's subrogation claim is meritless. "Subrogation is a doctrine of equity long recognized in Indiana[,]" which "applies whenever a party, not acting as a volunteer, pays the debt of another that, in good conscience, should have been paid by the one primarily liable." *Erie Ins. Co. v. George,* 681 N.E.2d 183, 186 (Ind.1997). Waste assumed primary liability for the Baghouse claims, and therefore, cannot seek coverage from Honeywell's Insurers under the theory of subrogation.