Green Mountain Propane Gas v. Kimball, No. S486-01 CnC  (Norton, J., Feb. 16, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                    SUPERIOR COURT
Chittenden County, ss.:                          Docket No. S486-01 CnC

GREEN MOUNTAIN PROPANE GAS

v.

KIMBALL

ENTRY

Plaintiff Green Mountain Propane Gas (Gas Company) seeks to recover settlement funds, attorneys' fees, and other costs that its insurer incurred defending a wrongful death and personal injury claim.  Defendant

Kimball and his insurance company argue that he is only liable for failing to procure insurance and that his damages for any breach should be limited to actual out-of-pocket expenses that the Gas Company had, which, because it was insured, are limited. Both parties have motioned for summary judgment and have submitted a joint stipulation of undisputed facts.

The court adopts this stipulation, which establishes the events leading to this suit. In May 1996, the Gas Company signed an agreement with Kimball, a contractor living in Barton, for him to install and service Gas Company's propane gas-fired equipment. The written agreement that Kimball signed contained the following two sections:

> 7. Insurance
> [Kimball] shall maintain policies of insurance providing . . . for general liability (bodily injury, property damage and completed operations) in the amount of at least $500,000, and shall provide the [Gas] Company with Certificates of Insurance to this effect, naming [Gas Company] as additional insured, prior to commencement of work under this agreement.

And

> 8. Indemnification
> [Kimball] shall indemnify, defend and hold harmless the [Gas] Company against all losses, damages, claims or demands, including reasonable attorney's fees by it, its employees and third parties, whether for injury or damage to persons, loss of life, or damage to property arising out of, or claimed to arise out of, or in any way connected with worked performed pursuant to this Agreement . . . .

Shortly after signing, Kimball began installing and servicing gas-fired equipment for the Gas Company. He obtained general liability coverage for $1,000,000, but he did not make the Gas Company a co-insured. In

June 1996, Kimball serviced a propane powered refrigerator in Westmore, Vermont. Three days later, it malfunctioned, sending carbon monoxide into the house, killing one and injuring several others. In the resulting lawsuit, Kimball and the Gas Company, through their respective insurance companies, settled with the victims and their families. Kimball's insurer paid well over $500,000 in its part of the settlement. Beyond their deductibles, neither the Gas Company nor Kimball had any out-of-pocket expenses from the incident.

Subsequent to the settlement, Gas Company and its insurer initiated this suit to recover expenses, including the settlement funds and attorney's fees. In 2002, this court made a preliminary ruling on the claims for settlement funds. Green Mountain Propane Gas v. Kimball, Docket No. S0486-01 CnC (Teachout, J., June 28, 2002). In that decision, Judge Teachout made three important rulings. First, she ruled that the indemnity claim for the settlement funds was untimely because the statute of limitations for the underlying tort had expired prior to the Gas Company's filing. Id. at 2. Second, she granted summary judgment to Kimball on the question of the settlement funds resulting from the breach of contract claim because the Gas Company and its insurer were "unable to show a loss as the amount of insurance coverage available and paid through [Kimball's insurer] . . . exceeded the amount required under contract." Id. at 2–3. Finally, Judge Teachout refused summary judgment on the remaining claims and ruled that "[t]o the extent this case is being pursued as a claim for *a breach of a contract to defend*, or for *a breach of contract to acquire insurance in the name of [Gas Company]* . . . . the claim has been timely filed." Id. at 3 (emphasis in the original). Since the settlement funds have been ruled out, damages under these remaining claims are limited to attorneys fees and any other costs. In the meantime, parties have conducted

additional discovery on these issues and both have motioned for summary judgment on the remaining claims.

## Duty to Defend

Judge Teachout's ruling on the question of whether Kimball had a duty to defend appears to break section 8 of his contract with the Gas Company into three separate promises, one to indemnify, one to defend, and one to hold harmless. In analogous case law concerning an insurer's duty to defend and duty to indemnify, the Vermont Supreme Court has implied that such promises are indeed separate and that the duty to defend is broader than the duty to indemnify. E.g., Garneau v. Curtis & Bedell, Inc., 158 Vt. 363, 366 (1992). Yet, the duty to defend is not completely independent as it is limited correspondingly by breadth of the party's right to indemnity and the terms of the contract. City of Burlington v. Nat'l Union Fire Ins. Co., 163 Vt. 124, 127 (1993); Garneau, 158 Vt. at 366. A party's duty to defend does not extend beyond its duty to indemnify, City of Burlington, 163 Vt. at 127, and its scope is defined by the language of the contract. Id. In this case Kimball's duty to defend is tied closely to his duty to indemnify for any claims arising from his work. Unlike either Garneau or City of Burlington, Kimball is not the Gas Company's general insurer, and his duty to them with regards to indemnity or defending them must come from or involve his activities. Or, as section 8 of the agreement puts it, he had a duty to indemnify or defend for "damage to property arising out of, or claimed to arise out of, or in any way connected with worked performed pursuant to the Agreement."

The difficulty here is that the facts of the underlying tort have been left vague. All that has been established is that Kimball serviced the

propane-powered refrigerator, and three days later, it leaked deadly carbon monoxide gas into the house. This would not be enough evidence to establish Kimball as a probable causative source of the accident, but it does establish him as a possible one. If this was a claim for indemnity, it would raise questions about the scope of the contract in light of the legal limits to indemnity. Investment Properties, Inc. v. Lyttle, 169 Vt. 487, 493 (1999) ("We allow such loss shifting as a matter of fairness so that the party 'without active fault' does not end up shouldering the loss, while the actively-negligent party escapes liability."); see also 41 Am. Jur. 2d Indemnity § 12 (noting that indemnity contracts should be strictly construed and given effect only if consistent with legal principles). That is, should Kimball and his insurers be required to indemnify the Gas Company where the Gas Company cannot show that Kimball caused the underlying tort? This is an open question, but given the constrained nature of indemnity, it would, at the very least require further evidence evincing Kimball's negligence. Otherwise, without a preponderance of proof—a probability that Kimball's negligence caused or was a factor in the accident— indemnity would be impossible to assign, notwithstanding the broad language of the agreement.

Yet, this case is no longer about the duty to indemnify but rather the duty to defend. As a broader duty than indemnification the duty to defend only required a possibility to trigger it. Under the broad contract language, Kimball's duty was to defend the Gas Company against any claim that arose out of or was in any way connected to his work. The fact that neither party has demonstrated whether or not Kimball's actions caused the injuries is irrelevant. What is important is that the facts demonstrate a potential connection, one of which Kimball was aware and had notice. This fits within the legal concept of the duty to defend as a duty that exists where

there is a possibility of indemnity. Garneau, 158 Vt. at 366 (citing 7C J. Appleman, Insurance Law & Practice § 4684.01, at 99 (1979)). Even if the court would have limited Kimball's contractual indemnification to only what he probably caused, his duty to defend is not so limited as it is premised on possible, not probable, indemnity.

The factual causes and parties in this case are limited to three possible sources—Kimball's negligence, a defective product from the Gas Company, or comparative negligence by the owners. Given that Kimball was the last to work on the appliance, that he serviced the propane burner (the source of the carbon monoxide), and that there were only three days between the servicing and the accident, the court cannot not rule out his possible causative connection and liability for the injuries. This, according to the terms of his contract with the Gas Company, required him to defend them. His failure to defend the Gas Company in the underlying tort claims was a breach of that duty. Furthermore, the relatively straightforward facts and limited number of parties in this case distinguish it from the decisions of other courts where they have withheld on the duty to defend so long as the right of indemnity remains unsettled. Cf. Regan Roofing Co. v. Superior Court, 29 Cal. Rptr.2d 413, 436–37 (Cal. App. 1994) (refusing to rule on a duty to defend where liability and indemnity between 24 subcontractors involved in a multi-phase construction project had not been established). As a result of Kimball's breach, Gas Company claims that it has had to pay attorneys, expert witnesses, and settlement costs to defend it in the underlying claim. To the extent that these expenses are reasonable, they naturally flow from Kimball's breach of the duty to defend as they would not have been incurred if Kimball had defended the Gas Company from the beginning. A. Brown, Inc. v. Vermont Justin Corp., 148 Vt. 192, 195–96 (1987) (noting that the law allows for recovery of damages that

flow naturally from the breach of the contract). Kimball shall compensate the Gas Company and its insurer for these costs and fees.

To a certain extent, Kimball seems to argue that the duty to defend is such a function of, and closely tied to, the right of indemnity that the same statute of limitation should be applied and the court should not have considered the merits of the claim. In other words, since the duty to defend existed only to the extent that the Gas Company had a right of indemnity, the failure of the claim for indemnity should also eliminate the duty to defend. This issue does raise a serious question of law, but Kimball fails to provide any caselaw supporting this proposition. Without such support or persuasive reasoning, the court is loathe to overturn its prior ruling refusing to grant Kimball summary judgment on this issue. Furthermore, it is to an extent irrelevant as the following analysis demonstrates a second source for Kimball's liability to the Gas Company for attorney's fees and expenses.

**Breach of Contract to Procure Insurance**

The Gas Company and its insurer's remaining claim comes from Kimball's breach of section 7 of the contract. In that section, Kimball promised to make the Gas Company a co-insured on his general liability policy. Kimball failed to do so, and his failure was a breach of the agreement, a fact Kimball does not dispute. What Kimball does dispute is how to measure the resulting damages.

Kimball and his insurer point out that a promise to procure insurance is different than a promise to indemnify. See, e.g., <u>Inchaustegui v. 666 5th Ave Ltd. P'ship</u>, 749 N.E.2d 196, 198–99 (N.Y. 2001). This statement is

correct but not in the way in which Kimball intends.  Kimball attempt to distinguish the promise to insure from the promise to indemnify as a way of limiting the damages.  The distinction that Inchaustegui and similar cases make is merely that the two promises are separate and create separate causes of action.  As one court explained it:

> Under an indemnity agreement, the promisor agrees to assume all responsibility and liability for any injuries or damages.  Under an agreement to obtain insurance the promisor merely agrees to procure the insurance and pay the premium on it.  Once the insurance is obtained, the promisor bears no responsibility in the event of injury or damage, even if the insurer should breach the insurance agreement through no fault of the promisor.  While the joint venture in this case is suing to recover any monies it may have to pay to the injured parties plus all costs of defense, this is not because [the promisor] promised to indemnify the joint venture; it is because if a person breaches a contract to obtain insurance, he is liable for any damages caused by the breach.  In this case this would be the amount of any judgments up to the amount of the policy limits bargained for (or perhaps beyond if an insurer under the facts presented would have settled the cases rather than allowed them to go to judgment) plus the costs of defending the tort action.

Zettel v. Paschen Contractors Inc., 427 N.E.2d 189, 192 (Ill. App. 1981); see also Robinson v. Janay, 253 A.2d 816, 819–20 (N.J. 1969) ("A liability insurance policy . . . would have required the insurance company to provide and pay for Janay's defense . . . as well as . . . the judgment entered . . . and this without any necessity that Janay first pay the judgment.  The policy called for was one insuring against liability, not a policy of indemnity."); Kennelty v. Darlind Const. Inc., 688 N.Y.S.2d 584, 586–87 (N.Y. App. Div. 1999) ("[B]ecause the insurance procurement clause is entirely independent of the indemnification provisions in the contracts, a final

determination of the liability . . . 'for [their] failure to procure insurance need not await a factual determination as to whose negligence, if anyone's, caused the plaintiff's injuries' . . . ."). Thus Kimball's promise to make the Gas Company a co-insured was a promise to procure insurance, and it breach created a separate cause of action for the Gas Company to pursue, nothing more.

The heart of Kimball's opposition to Gas Company's proposed measure of damages is that Gas Company was already insured prior to the accident and as a result Kimball's breach caused no actual damages. This is essentially an argument that a promise to procure insurance is merely a promise to cover a risk and not assume that risk; so that if a collateral source covers the risk and no out-of-pocket harm comes to the party, then there are no damages.

Kimball's argument places a great deal of emphasis on the Inchaustegui case and necessitates some familiarity with its facts. In Inchaustegui, a landlord signed an agreement with a tenant that included a promise that the tenant would procure insurance and make the landlord a co-insured on the policy. 749 N.E.2d at 198. Tenant failed to do so. Id. When the two were sued by tenant's employee, the tenant and landlord's insurance companies settled, and landlord sued tenant for breach of contract. Id. As with the present case, the real dispute was about the measure landlord's damages. The New York Court began its analysis by noting that if landlord had not been separately insured, tenant would have been liable for all of the resulting costs. Id. The Court ruled, however, that because the landlord was insured the proper measure of damages was limited to landlord's out-of-pocket expenses, such as insurance premiums, deductibles, and any increase in its insurance rates caused by the claim. Id.

at 199.  Their goal was to put the landlord in the same position it would have been if the tenant had named him as a co-insured.  Id.  The Court refused to include the settlement funds, attorney's fees, and litigation costs incurred by landlord's insurer because, as it explained, New York does not apply the collateral source rule to contract actions.  Id.  Thus, the fact that landlord had obtained its own insurance, enabled the tenant to minimize his liability.

From Inchustegui, this court is urged to adopt the conclusion that the remedy for breach of a promise to procure insurance is limited to out-of-pocket expenses.  This is not the conclusion that Vermont law proscribes.  There is no question that a party, such as Kimball, is liable for damages that flow naturally from a breach of a promise.  As Inchustegui suggests in the beginning of its analysis, these damages include the amounts that would have been due under the insurance contract should it have been obtained.  Id. at 198 ("A landlord who has no knowledge of a tenant's failure to acquire the requisite insurance and is left uninsured may recover the full amount of the underlying tort liability and defense costs from the tenant."); see also Doherty v. Davy Songer, Inc., 195 F.3d 919, 926–27 (7th Cir. 1999) (applying Indiana law); Shell Oil Co. v. Nat'l Union Fire Ins. Co., 52 Cal. Rptr. 2d 580, 588–91 (Cal. App. 1996); Swickey v. Silvey Co., 979 P.2d 266, 269 (Okla. App. 1999); Kobbeman v. Oleson, 574 N.W.2d 633, 635 (S.D. 1998); Action Ads, Inc. v. Judes, 671 P.2d 309, 312 (Wyo. 1983); 44 C.J.S. Insurance § 259; 4 P. Bruner & P. O'Connor, Construction Law § 11:104 (2005).

The real question is whether Kimball should benefit from the collateral coverage that Gas Company had from its own insurance company.  In Inchustegui, the New York Court reduced the amount of

damages because it included the landlord's insurance recovery in its calculation. This collateral source was not barred from consideration because New York has rejected the collateral source rule for contract claims. Vermont has also adopted the collateral source rule and has extended its application explicitly to cases sounding in contract. Hall v. Miller, 143 Vt. 135, 141–44 (1983). Thus, Kimball's reliance on Inchustegui to the extent that it limits damages through a refusal to apply the collateral source rule is improper.

The real measure of Gas Company's damages from Kimball's failure to make it a co-insured are its deductible, its rate of increase in premiums as a result of this claim, its attorney's fees, and litigation costs. All of these naturally flow from Kimball's failure to obtain insurance as each one would not have occurred but for the failure to be named a co-insured. The fact that the last two were paid by Gas Company's insurer does not relieve Kimball of his liability for them. Since this is a subrogation action, there is no real question of unjust enrichment. Gas Company's insurer, by stepping into the shoes of the Gas Company, will only be recouping its actual expenses. Neither the insurer nor the Gas Company will receive a windfall from this decision. Further, there is no reason to distinguish Gas Company's right to recovery simply because its insurance company is subrogating. A subrogation under V.R.C.P. 17(a) allows an insurer to sue in the name of the party for whose rights the insurer claims. As the prior analysis explains, the right to recovery is Gas Company's, not its insurers. Subrogation simply allows the insurer to pursue those rights. See, e.g., Lopez v. Concord Gen. Mut. Ins. Group, 155 Vt. 320, 324–27 (1990). Therefore, the fact that this is a subrogation claim does not modify the court's analysis.

Finally, apart from the collateral source rule, there is evidence to support the conclusion that the Gas Company intended to shift its insurance burden aware from its insurer to Kimball's.  See  Doherty, 195 F.3d at 926 ("In our view, central to a resolution of this issue is the principle that parties may shift, by contract, their burdens of risk, and therefore affect the obligations of their insurers.").  In this respect, the Gas Company relied on Kimball to provide insurance, not because the Gas Company lacked insurance, but, because it desired to shift the risk of liability for his work wholly onto Kimball's insurer.  Thus, the Gas Company incurred reliance damage from Kimball's failure to shift insurance coverage.  See Restatement (Second) of Contracts § 344.  For this further reason, the court concludes that the proper measure of damages for the breach of section 7 by Kimball is attorney's fees and litigation costs, as well as Gas Company's deductible, and rise in premiums.

Based on the foregoing, plaintiff Green Mountain Propane Gas's motion for summary judgment is granted.  Parties will submit proposed or stipulated calculations of damages in conformity with this entry.

Dated at Burlington, Vermont_____, 2005.